***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence. The Pre-Trial Agreement was marked as stipulated exhibit 1.
2. Subsequent to the hearing, the parties submitted a set of medical records that were marked as stipulated exhibit 2 and received into evidence.
3. Subsequent to the hearing, the parties stipulated to the receipt into evidence, the medical records of Dr. Cole. These records were marked as stipulated exhibit 3 and received into evidence.
4. On July 18, 2000, the day of the alleged injury by accident giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. On July 18, 2000, an employer-employee relationship existed between the employee and defendant-employer.
6. The named employer is self-insured. Cambridge Integrated Services is the servicing agent.
7. The employee's average weekly wage shall be determined by the Industrial Commission after a review of a Form 22 prepared by the employer to be submitted at the hearing of this matter. (No Form 22 was ever presented to the Deputy Commissioner for consideration.)
8. On August 7, 2000, the employee gave a recorded statement to a representative of the servicing agent. While the Pre-Trial Agreement identifies that this statement was attached to the Pre-Trial Agreement, no such statement was ever presented to the Deputy Commissioner for consideration.
9. The depositions of Dr. Lawrence Blinn, Dr. Stephen Michael David, Dr. Keith M. Maxwell, Dr. Lesco L. Rogers, and Dr. Michael Stephens are a part of the evidentiary record in this case.
 *********** ADDITIONAL EXHIBITS
1. An employee occurrence report marked as plaintiff's exhibit 1 was received into evidence.
2. An employee occurrence report marked as plaintiff's exhibit 2 was received into evidence.
3. A Form 61 dated August 11, 2000 was marked as plaintiff's exhibit 3 and received into evidence.
4. A request for leave was marked as defendant's exhibit 1 and received into evidence. This record is contained in the set of medical records received into evidence.
5. A videotape marked as defendant's exhibit 2 was received into evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, plaintiff was thirty-nine years old. Plaintiff is male and has an Associates Degree in Radiological Science and an Advanced Degree in Cardiovascular Interventional Technology.
2. Prior to July 18, 2000, plaintiff had been employed about two and one half years by the defendant-employer as a cardiovascular technician. Plaintiff's job duties included transporting patients by surgi-lifts, manual lifts and wheel chairs.
3. Prior to July 18, 2000, plaintiff had undergone two lumbar laminectomies and three cervical fusions.
4. In April 1999, plaintiff was throwing away something into a garbage can when he heard a popping sound in his lower back. Plaintiff experienced lower back pain for several days following this incident. Initially, plaintiff's lower back improved but in approximately October 1999 plaintiff's pain worsened and began to involve his left hip with radiation down to his knee and intermittently to his heel. Plaintiff reported these problems to Dr. Cleveland Thompson on November 1, 1999. On December 16, 1999, plaintiff sought a medical leave of absence based upon the pain he was experiencing in his neck and from his lower back.
5. On January 17, 2000, plaintiff was helping manually lift a patient at work for the defendant-employer when he experienced a spasm in his lower back and numbness in his left heel. Plaintiff sought medical treatment for his lower back at the emergency room for the defendant-employer.
6. On January 19, 2000, plaintiff reported to Dr. Cleveland Thompson that he had been experiencing back spasms during the last week. Plaintiff was experiencing low back pain and radicular symptoms at that time. Plaintiff's pain felt like he had sustained a herniated disc. On January 24, 2000, plaintiff underwent an MRI that did not reveal any evidence of a recurrent disc protrusion and only minimal degenerative disc changes at the L4-5 level.
7. On May 3, 2000, plaintiff sought medical treatment for his lower back at the Asheville Family Health Center. Plaintiff reported to Dr. Stephens that he was experiencing left leg pain and paresthesias in the 2 middle toes. Plaintiff suggested to Dr. Stephens that these symptoms worsened while standing at work wearing a lead apron for long periods of time. Plaintiff was experiencing financial problems at that time and had been financially unable to be examined by a rheumatologist as had been recommended. Based upon these increased report of symptoms in his lower back, Dr. Stephens placed the plaintiff under the following restrictions: no prolonged sitting, standing and no wearing of the lead apron at work.
8. From at least November 1, 1999 to May 15, 2000, plaintiff experienced more pain in his neck as compared to his lower back. However on May 15, 2000, plaintiff reported to Dr. Stephens that his low back pain had become worse than the cervical pain he was experiencing. Plaintiff reported a burning pain that had spread from his lower back down to his toes.
9. On May 29, 2000, plaintiff underwent a lumbar myelogram that revealed that plaintiff had sustained a recurrent disc protrusion at the L4-5 level. A CT scan taken the same day revealed a mild to moderate central to left-sided disc protrusion causing some effacement of the anterior thecal sac. Dr. Thompson was unable to identify any definite nerve root impingement at the L4-5 level.
10. Beginning on June 21, 2000, plaintiff underwent a lumbar epidural injection. Following this epidural injection, plaintiff's pain worsened to such an extent that as of June 26, 2000 plaintiff was only able to sleep between two and four hours a night.
11. On July 18, 2000, plaintiff was pulling cloth straps to a locking device in order to secure a patient to a padded frame in order to be lifted from a table and transported to a recovery room. Plaintiff had to slide the padded frame with both of his arms as he pulled the cloth straps. Plaintiff heard a pop and experienced " electricity" down his leg and eventually experienced cramping in his left buttock and thigh following this incident.
12. An August 10, 2000 MRI revealed that plaintiff had not experienced a recurrent disc herniation at the L4-5 level. There was no significant difference between this MRI scan and the January 24, 2000 MRI scan performed on the same region of plaintiff's lower back. There was no significant difference between these two MRIs and the findings from the May 29, 2000 CT scan and myelogram.
13. A December 19, 2000 discogram revealed that the plaintiff had sustained a disc protrusion at the L4-L5 level. This finding is consistent with the findings made in the studies identified in paragraph 12.
14. Despite the January 19, 2000 medical records from Dr. Thompson to the contrary, plaintiff specifically testified that the injury he sustained on January 15, 2000 was a little strain at work that was gone the next day. Plaintiff offered to elaborate and stressed that it was gone the next day and he didn't even see a doctor for it.
15. Despite the May 3, 2000 medical records from Dr. Stephens to the contrary, plaintiff specifically testified that prior to July 18, 2000, he did not have any restrictions placed on the use of his lower back at work. Plaintiff offered to elaborate and stressed that the only restrictions that had ever been placed upon him at work for the defendant-employer were restrictions imposed as a result of the 1999 surgery for his neck.
16. Despite the May 15, 2000 medical record from Dr. Thompson to the contrary, on July 21, 2000 plaintiff reported to Dr. David that it was unusual for him to have pain below his knees.
17. On July 21, 2000, plaintiff sought medical treatment with Dr. David for his lower back pain. In the history recorded by Dr. David, there is no mention of plaintiff's ongoing treatment for his lower back pain by Dr. Thompson. Plaintiff's lower back history as recorded by Dr. Thompson only includes mention of his 1983 and 1994 surgeries. Dr. David opined in his medical record and in his testimony that plaintiff had sustained an exacerbation of his pre-existing lower back problems based upon a lack of knowledge of plaintiff's ongoing treatment for his lower back pain by Dr. Thompson. Because Dr. David did not consider plaintiff's history as recorded in Dr. Thompson's records, the Full Commission gives little weight to his opinion.
18. Plaintiff's testimony that since July 18, 2000 plaintiff's back pain had become constant as opposed to intermittent is the only evidence presented that would support plaintiff's claim that his pre-existing back problems had permanently worsened as a result of the July 18, 2000 lifting incident. None of the diagnostic tests undergone by the plaintiff before and after July 18, 2000 reveal any permanent worsening of the plaintiff's condition. Dr. Maxwell's opinion that plaintiff had sustained an exacerbation is dependent upon the credibility of plaintiff's description of the development of his pain. Furthermore, his opinion does not delineate as to whether the exacerbation was temporary or permanent. Based upon the discrepancies identified in paragraphs 14, 15 and 16, the Full Commission is unable to make a finding that plaintiff's testimony that his pain was intermittent prior to July 18, 2000 and then became constant after July 18, 2000 is credible. Therefore, the Full Commission gives little weight to the aforementioned opinion rendered by Dr. Maxwell.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to show by the greater weight of the evidence that he sustained an aggravation of his pre-existing back problems on or about July 18, 2000. Anderson v. Northwestern Motor Co., 233 N.C. 372,64 S.E.2d 265 (1951).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for compensation is HEREBY DENIED.
2. Each side shall bear its own costs.
This the ___ day of June 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER